20-4165 Michael Threat et al v. City of Cleveland OH et al oral argument not to exceed 15 minutes for plaintiffs, 15 minutes for defendants and 5 minutes for the amicus. Mr. Klebano for the appellants. May I proceed your honors? Yes, good afternoon. Good afternoon, my name is attorney Jared Klebano. I'm here today on behalf of plaintiff's appellants and I've asked to reserve three minutes of rebuttal of my time today. Yes. Per the City of Cleveland EMS scheduling policy, if you are a white captain, you just get to be a captain. If you are a black captain, you are subject to a white captain supervision. Equality, the state of being equal, especially in status, rights and opportunity. The matter before the court today is a test of just we have come since the end of the Jim Crow laws. The facts before the court are straightforward. The City of Cleveland has asserted and doubled down on its right to institute a policy prohibiting the shift of all black EMS captains or permitting all white shifts to proceed. In lieu of conceding that policy is illegal or at a minimum not appropriate, the EMS Commissioner Nicole Carlton insinuated at her deposition that unless a court tells her otherwise, she is ready to continue that practice into the future. With my time today, I intend to address two issues. Issues related to appellant's Title VII claims and that plaintiff's retaliation claims were improperly dismissed by the district court. Appellants will rely on their brief for its arguments which go unaddressed in my time today. Title VII prohibits an employer from discriminating. So, counsel, the key question is we have all these cases that say shift changes do not count as a material adverse employment action or if you want to go to the language of Title VII, do not count as discrimination in terms or privileges of employment. What do we do with that? Well, your honor, as you had stated, the actual text, any effect on terms, conditions, privileges based on race is a violation of Title VII. With the precedent that has been established, we feel that this case does meet that bar and an important thing to note, there has been Sixth Circuit authority which has talked about when there are certain characteristics of, for example, a shift change or a job change that, for example, prestige can be considered and in this case, very important. So, what we have here is we have an African-American group of captains that and get an all African-American or black shift. They're been told by the commissioner, no, the white shifts can proceed, the black shifts cannot. They're essentially treated as junior varsity captains. Now, how does that look for subordinate employees? Now, these black captains have supervisory responsibilities which are part of Title VII and evaluating whether or not there are changes to their terms, conditions, and privileges. So, here, this group of captains now has to face subordinate employees which whom they are required to give orders and to have rely on and they're looking at them saying, well, the highest ranking official in the city of Cleveland is telling us that white captains can just be captains. Black captains need supervision. It absolutely affects the prestige of the position and in addition to that, your honor, certain shift changes have been held to meet that standard. So, for example, do you object to the use of material and adverse as synonyms for discrimination in terms of employment? I mean, isn't it possible, you know, I realize the risk of synonyms, right? It's the game of telephone. You start with one word, you get to another and before you know it, you're far from the original word but isn't there a way you can still win this case where we just treat material and adverse as, you know, all statutes come with a de minimis exception, right? You would agree that Title VII doesn't cover a de minimis change in terms. So, can't we harmonize the language of Title VII with this material adverse point and you still have room for a victory or is that not possible here? Your honor, in looking at the text of the statute and it's important to note, Congress knows how to limit a statute if they like. You know, the Equal Pay Act, for example, they limit what it covers. Here, Title VII was meant to eradicate all discrimination, all discrimination based on race, gender, so on and so forth. So, here, of course, there is the Article 3 standing which is requirement, which is your basic harm. So, you know, yeah, I would say that in this case, you know, it doesn't need to meet that materiality standard but if this court were to hold that we are going to look to that materiality standard, absolutely plaintiffs should still prevail in this case because based upon the city of Cleveland's egregious conduct and outright discrimination based on race, the shift change meets that bar. So, you know, to answer your question, it is not required that we get there. I think that the Title VII statute, the text intended by Congress does not have that materiality element but even if that's being factored in in this case, the plaintiffs meet that bar. But didn't the Supreme Court apply to materiality bar in the Burlington Northern case and there's less, I mean, arguably less text if, I mean, with respect to retaliation than there is in a core case, in a core discrimination case. So, if they did it there, why we would have to follow that, right? Yeah, so Judge Nalbany, on the issue of Burlington Northern, that's a low bar. So, it's important to note that Burlington Northern essentially is holding that would the conduct of the employer dissuade a reasonable employee from engaging in protected activity or continuing that protected activity. So, in application to this case, for example, in turning to that retaliation point, the unfair labor practice charge and the particularity of how the city of Cleveland picked on plaintiff beavers goes right to the heart of what Burlington Northern is saying, which is, in essence, if a reasonable employee says, well, look, these other African-American captains filed a discrimination claim very quickly after the city of Cleveland files an unfair labor practice charge, which essentially says we're going after you for filing your discrimination claim, it would absolutely dissuade a reasonable individual and that's the bar that Burlington Northern. Just to make sure I'm understanding your answer, I thought Judge Nalbany was actually asking about the discrimination claim and saying, listen, if Burlington Northern adds materiality to the test when the retaliation provision doesn't suggest materiality, isn't it okay to use materiality in the discrimination section? I mean, put another way, are you okay with the Burlington Northern test? In other words, would a reasonable employee perceive this as a harmful form of discrimination? Sure, and in understanding the question, again, we would argue in our position is that the actual text and intent of Congress does not have that materiality element. When looking at Burlington Northern and understanding that the precedent that's set, even if that materiality element is there and that low bar is there, in this particular case, plaintiffs have met that bar and that's inclusive of the prestige of the position being changed, the terms, conditions, and privileges being changed. Although the actual text and intent of Congress, it's our position to not have the intent to have that materiality element like some of its other statutes, in this case, plaintiffs meet that bar even with that standard. What about the plaintiffs whose shifts were not changed? I mean, aren't they in a different position? In other words, nothing really happened to them, so why do they have a cognizable claim? Let's accept for the sake of argument, you're right, that someone whose shift is actually changed in violation of their seniority preferences, et cetera, we'll say for the sake of what about the people whose shifts are not changed? Well, first and foremost, Chief Judge Sutton, what I would say is these African-American captains are being told who they're allowed to work with. Who you work with is a term and condition of your employment. It's certainly a condition of your employment. So here, for example, the specific facts of our case, we have plaintiff Nolan Moore, plaintiff Walker, and plaintiff Anderson are all supposed to be on same shift together. Because of this discriminatory change, they are now being told they can't work together because they're Black captains. Who they work with is a term and condition of their employment. So even though their specific shift was not changed, like plaintiff Rapal and Anderson, they were absolutely affected and have harm. And that's in addition to our other captains, right? So plaintiff Beavers had a priority moved because of Nicole Carlton's intent to this policy under which his prestige of his position is now deminimized in the way that our subordinate employees are going to look to them. So even though we only have one plaintiff appellant whose shift was actually moved, they've all been greatly affected and harmed and certainly would have standing to our Title VII claim. As Justice Kavanaugh held in his concurring opinion as the U.S. Department of Housing, whenever an employee demonstrates that an action is taken, in that case, a lateral transfer because of... So counsel, yeah, we're aware of that opinion. I think the thing I'm not sure you answered at the outset is we still have a bunch of cases that say shift changes don't count as cognizable adverse actions. What do we do about that in the case? How can you win and we not follow those cases or how can you win and we still follow those cases? Sure. And there's a split Chief Judge Sutton on a lot of these. So certainly there are some cases talking about shifts, but the trend among these cases is looking at the specific facts of each case. So for example, in Deleon v. Kalamazoo, a change in schedule, which made it more arduous or dirty or job, that's a Sixth Circuit case held that a shift change can be a cognizable claim with a change in terms, conditions of employment. Ginger v. District of Columbia, I know that's a D.C. Circuit case, said affecting the sleep schedule is enough to deem that a shift change is adverse. So here, there isn't a straight precedent that always says shift change cannot be or meet this bar. And we have other cases in our own district, which are look at the different elements and aspects and characteristics of the job. We have numerous cases that talk about prestige. Is the prestige affected? And here it most certainly is. There's no way around. What is the argument? So this is an objective. So the question is whether an objective person or employee would think the prestige is less, I guess, or would think there the prestige was affected or whatever. What is the evidence? Like, what evidence do you have? Or what do you look at if you're deciding what the objective person would think? Your Honor, in a case like this, there's really no question that this is outright discrimination. It's a EMS captain, the highest official in the city of Cleveland, saying blacks can't work together, whites can. What message in 2021 is that sending to subordinate employees? Do you think? Okay, I hear you. Okay. No, I understand. Thank you. And Your Honors, I see that my time is up. Thank you. All right. Thank you. From the next advocate, I'm thinking it's the government, but I could be wrong. Did you want defendants? Originally, we were told that we didn't know what order. I'm more than willing to go forward now. But if you would prefer to hear it, tell me, are you with the government? No, Bill Benzelor, Chief Assistant Director of Law with the city of Cleveland. Let's hear from the government second and you next. Okay. Thank you, Your Honor. Anna Baldwin for the United States as amicus. United States requested argument time in this case in order to urge this court to clarify that discrimination claims under Section 703A1 of Title VII don't require a showing of either material adversity or significant change in the plaintiff's terms, conditions, and privileges of employment. Under the plain language of the statute, a shift assignment policy that governs when and with whom an employee works affects that employee's terms, conditions, and privileges of employment. In this case, black captains in Cleveland's emergency medical services are not permitted to supervise paramedics without also having a white captain assigned to their shift. That policy is... So counsel, just to maybe jump in the conversation we've been having, we have a bunch of precedents that seem to suggest, one, that material adverse employment action is required for a cognizable claim, and two, that shift changes generally don't satisfy that. What do we do with that? As to this court's precedent, I think there's a way that this court, there's certainly none of this court's precedent that would say, don't start with the plain language of the statute. That's the Supreme Court's instruction in every case. So if the plain language answers the question, the court's free to do that. I understand the complication with some of the shift assignments, and plaintiffs have argued that they can show material adversity. Do you agree that Title VII comes with a de minimis exception? I agree that like any federal statute, there's a background principle in the federal common law that there's a de minimis principle, but I don't think that's specific to Title VII, certainly. I think in Title VII, if the court is looking to how could this court harmonize, this is blatant discrimination. This is essentially an employer hanging a sign in its workplace saying no shifts by only black supervisors. They must be accompanied by a white supervisor, and that just can't be the outcome under the statute. It can't be that there has to be some sort of material harm. I mean, that's blatant discrimination in the heartland. Part of where the precedent starts to go awry... What do we do with Burlington Northern? I mean, the Supreme Court applied a materiality requirement, and so we're bound by the court. I understand it was in a retaliation case, but I don't see how we could say there's no... And we have our own in-bank decision that was appealed from in the Supreme Court. It was inconsistent with the Supreme Court's decision, but the part of it that discussed materiality really, in my mind, was untouched, at least in So how can we do anything short of in-banking this case? Well, so as to Burlington Northern, the United States reads the materiality requirement as specific to the text of the retaliation provision, which is different from the text of the anti-discrimination provision in two important ways. It isn't limited to terms, conditions, and privileges of employment, and it's based on conduct, not status. So any kind of discriminatory act that is based on a protected status that goes to the terms, conditions, and privileges of employment, saying you, because you are a Black employee, may not work this shift, that is to apply a materiality requirement on top of that is sort of like doubling the requirement. But that conduct-based discrimination in the terms, conditions, and privileges of employment is inherently going to be significant, the serious material. Why can't you align this by saying materiality is consistent with de minimis? Well, because, Your Honor, I think the case law shows that there's a kind of confusion about lateral transfers. What if it's just one shift to continue to be confusion and leading to these sorts of results that courts are ending up sanctioning brazen discrimination unless the court returns to the plain language of the statute? I just want to make one point. Just to be clear, you agreed there's a de minimis exception. There's obviously an Article III requirement of actual injury. Why isn't the answer to be careful with how you use materiality? Just be careful. Just remember, the only way it makes sense is if it's consistent with the de minimis exception that applies to all federal statutes. Your Honor, if I could answer, I see my time is up. I think, in principle, I understand the impulse, but the way that the case law is developed, we see what happens when there's become this entire sort of vestige of case law that's divorced from the statutory terms and it's taken on a life of its own. You don't have to work hard at selling us on the point that it's about the danger of ignoring the terms of the statute. We got it. I think Judge Nalbandian is raising the point, and I'm echoing it. We have a U.S. Supreme Court to whom we report that seems to be pretty comfortable with materiality. I'll bet I could find some discrimination Title VII cases where they use the word materiality. We've got to respect that. It'd be very strange for us to say bye-bye to the word materiality, first of all, for a panel to do it without embanking. That would be even stranger. But even if we embanked it, it wouldn't solve the problem. We've got U.S. Supreme Court decisions that are using that as a synonym at a minimum for Article III injury and de minimis. Your point is, why isn't your point we've been pushing too hard on material, and all we really need to do is a slight course correction, and that takes it back to the language of the statute a little more closely. I think, Your Honor, the origin of the mistake can start with the misapplication of the Supreme Court's decision in Eller, where Eller, what a tangible employment action is, is a significant change in the employment status, like a demotion, a significant change in benefits. And that has sort of become grafted onto the anti-discrimination provision. But all Eller was ever about was about when do you have a tangible employment action which is sufficient and to allow automatic imputation of vicarious liability. Eller was never about defining the substantive anti-discrimination standard. And so you can see in this court's case law, where district courts and this court start using the definition of a tangible employment action as the definition of an adverse employment action. And the Supreme Court in Eller itself noted very clearly that it wasn't endorsing that sort of significant change standard as synonymous with the scope of Section 703A1. And then White again, you know, doubled down. And so I think that's part of what's important about understanding the limits. Just remember what Judge Nalbanyan, remember Judge Nalbanyan's question. Retaliation doesn't have any language that is suggestive of materiality, unless materiality is shorthand for de minimis. So why isn't that the way to think about this? Because the retaliation provision also doesn't have the two key characteristics that the anti-discrimination provision has. The retaliation provision isn't limited to acts that affect the terms, conditions, and privileges. And it's not based on status-based discrimination, which is inherently serious, inherently, you know, if you wanted to use a word like material, that kind of status-based, I can have a policy that says you may not have this shift because of your race. There is no instance in which that's ever going to be immaterial. So it really doesn't... Is that really the case? I mean, how about, you know, national origin employees, one gets blue-covered iPhones and one gets red-colored iPhones. Who cares? Your Honor, I think any kind of those, you know, maybe an employer may have a bona fide occupational reason that they may have, but any kind of policy that's making a distinction based on protecting characteristics, at a minimum, that's going to be actionable. So what do we do? I'm sorry. No, go ahead. Go ahead. What do we do with McDonnell-Douglas tests, like a circumstantial case where adverse action is an element of the claim? I mean, would you think a direct evidence case is different than a McDonnell-Douglas case in terms of whether adverse employment action is required? Well, certainly, Your Honor, part of the reason why this case brings out the problems with the adverse employment action sort of doctrine and the way it's gotten away from the text is because it's a direct evidence case where you have a decision-maker admitting multiple times that it's based on race. The way that I think it could be different in a McDonnell-Douglas case is you're still going to have, you know, your normal Iqbal Twombly pleading. So if somebody just says, I was given a different shift and I'm sure it's based on my race, I don't have any other evidence, I don't have a comparator. I mean, you still have the other statutory elements. You still are going have to show that the discrimination is because of a protected characteristic. So in that sense, they're different. But, you know, this case, because it is a direct evidence case, really, it's in the heartland. It just shows that it just can't be the case. But McDonnell-Douglas and direct evidence are both trying to get at the same thing, which is discrimination, right? The Supreme Court has said you look at whether there's an adverse employment action for purposes of a prima facie case for McDonnell-Douglas. If you're saying we shouldn't look at materiality or adverse action at all, do we get rid of McDonnell-Douglas too, that element of the McDonnell-Douglas test? Absolutely not, Your Honor. I mean, as long as we're defining adverse action as synonymous with something, an action that affects the terms, conditions, and privileges of employment. But the problem with the doctrine is that it's come to mean a much more constricted set of employment actions, whereas the United States would say the correct definition is one of an adverse employment action. It includes, just like the Supreme Court has said, it's a broad definition. It's intended to cover, you know, the entire spectrum of potentially prohibited discrimination. And so any incidents of the employee-employer relationship are going to be covered. The sort of obligations, customs, benefits, requirements of the employee-employment relationship. And so, of course, you have to prove a discriminatory action that changes one of those things. But it's just that there's no harm requirement above and beyond showing that the employer action affected one of those terms, conditions, and privileges, and that that action was taken on the basis of a protected characteristic. So I think you just answered the question that I was about to ask. You would still require an Article III injury, wouldn't you? Absolutely, Your Honor. Okay. So implied in what you just stated was an actual injury, something that actually hurts the individual. And then second, it's not a big leap to add a de minimis exception, but after that, you're okay with the test? Again, as long as the test is tied to the language of the statute. And, you know, we're not contesting that there's a background principle. You can't keep saying tied to the language of the statute because both of my questions are implying something not in the language of the statute, okay? So you're either agreeing or disagreeing. The reason they're both implied is you can't go to federal court without an Article III injury. So implied is something that requires an Article III injury. Otherwise, we have a the statute reaches that far. So that's one. And then second, unless the statute clearly says otherwise, these things all come with the de minimis requirement. Now, can't we agree that both of those are embedded in the statute, even if it doesn't say that? We can agree that, you know, in the background, principles of the federal commonwealth, I just want to be clear that any test that doesn't make clear that any transfer or any job reassignment is automatically actionable under the statute without a further showing of harm. If you have those kinds of employer actions taken, you don't need to show an economic or you use the word any basis, you use the word any and the record might show that this is actually what the claimant wanted. They wanted the Friday shift, they got the Friday shift. And they have a very litigious friend who brings the claim anyway, because they heard they heard you speak. And they said, Hey, we get a claim. And I'm like, I don't want you to keep talking like that. I don't think that's right. If it helps the person that is not an Article III injury. If you requested the transfer, that's not an Article III injury. I think where we're talking about an employer having a policy, you know, of making race based transfers or saying that, then the question of injury may be broader than an individual plaintiff. I think, you know, a policy that says that we are going to distinguish on the basis of these protected characteristics may have a stigmatic injury that goes beyond the one person. But certainly, so I, you know, the, the idea of a de minimis requirement, I just think that anytime an employer is taking admittedly race based actions, especially doing so in a policy, that's never going to be an immaterial. Okay. Thank you so much for your help. Thank you for answering all of our questions. We really appreciate the government's brief and perspective. So thank you so much for the opportunity, Your Honor. Yes, we'll hear from the city. Good afternoon. Once again, Your Honors, my name is Bill Manzalora. I'm the Chief Assistant Director of Law for the City of Cleveland. I've had the pleasure of arguing in front of this court for approximately 20 years now. I've had cases where arguments not made before the trial court are made for the first time in front of the Court of Appeals. I've had cases where conclusory arguments without any citation to evidence are made in front of the trial court. And then in front of the Court of Appeals, you have citation to the evidence or cases where you have citations, some evidence in the trial court and then the Court of Appeals have citation to other rewriting your brief. I've also had cases where arguments made before at the trial court level are repeated. Tell me what this wind up is for. I've never had a case where I've had all three of those in one case in which we have this in this particular case. I'll start with the adverse employment action. And before I get to the merit questions that everybody's been asking, I'll get to how we got here on the adverse employment action. Do what you wish, but you might help your client the most by picking up on the conversation you've had. The plaintiffs never raised the issue of adverse employment action in opposition to the defendant's motion for summary judgment. The first time you ever see the issue of adverse employment action. Let me ask you this. I mean, the district court said essentially adopted a categorical rule that shift changes were not adverse employment actions, right? I mean, I don't know. I'm just going off of what the district court said in the reading our cases. We've never really said categorically that shift changes cannot be adverse. We've said that there has to be something else going on. Work hours have to change, salary has to change, something else. Why is that not present here with either the prestige or in my mind, the fact that you use seniority to bid on these shifts and by giving you a second choice, you're ignoring the material benefits of your seniority. Why is that not enough under our current case law? Well, I would completely agree that the U.S. Supreme Court in Burlington said context matters. So context does matter in a particular case. In this case, plaintiffs don't support the argument of adverse employment with citation to any evidence. They didn't at the trial court level because they didn't make the argument at the trial court level. And if you look at the evidence, four out of the five plaintiffs did not have their shift change. And the one plaintiff that did have a shift change, you know, didn't make anything other than the naked argument that shift change is a per se violation, which the case law does not support. There's no affidavit attached saying, you know, because I was shift changed from, it's referred to as day to night. It's not actually day to night. It's a 12 hour shift. So it's day, afternoon, and then afternoon slash evening shift. But there was no evidence supported by the one plaintiff, Mr. Anderson, saying, you know, giving that extra something as to why there was a material adverse effect to him. Now, plaintiffs on appeal in their brief do argue three things. Once again, without citing to anything in the record, they argue the less distinguished title, which certainly isn't supported, their captain on the first shift, their captain on the night shift, they argue material loss of benefits, once again, without any citation to any evidence. But why isn't it a material loss of benefits when I use my seniority allows me to bid on a shift, I bid on the one that I want, and you tell me that I don't get the one that I want. So my seniority has been thrown out the window. Isn't that a material benefit that I lost? But the case law says that the per se changing of shifts or transfer doesn't result in that you have to have something else. And you know, plaintiffs brought up Ms. Beavers, plaintiff Beavers. Once again, if you look at the shift in question, which is B shift days, plaintiff Beavers was never going to get that position. Plaintiff Nolan Moore got the first bid. Plaintiff Walker got the second bid. And third bid would have been to Anderson. So plaintiff Beavers would have never gotten it. As far as plaintiff Anderson, you think the case law clearly says that a transfer in and of itself isn't enough, you have to be proper evidence. Do you read our cases to say that there's a categorical rule that shift changes are never an adverse employment action? No, I don't. Once again, I think your cases and more importantly, the US Supreme Court says context matters in all of these cases. So there aren't per se violations. And so that's one of the big points is even if you buy into the argument that you can have a adverse, materially adverse employment. I mean, I guess I'm kind of just restating Judge Nalbandian's question. Here you have two things going on. You have distinctions based on race with respect to what shift you serve that by itself is potentially discrimination in a term. And then second, you're denied the seniority privileges white captains are given in terms of preference. I the two together enough to say goes to a jury. I mean, I certainly I've read all these cases from our circuit. I haven't seen a case like that. So why isn't that the answer? You agree, there's no per se rule either direction. So why isn't this a case with two features? Shift changes based on race alone. And then above and beyond that, your privileges of seniority the union are denied? Well, I'll take the shift changes based on race. The Supreme Court in its Burlington decision, rejected the concurring opinions, raising the concurring judge in what ended up being a nine or opinion said one of the factors that should be looked at for material adverse actions is, you know, the nature of the violations that race discrimination, gender discrimination is a natural origin in the eight judges in the majority opinion, said no, those are two separate issues. The nature of the discrimination and the basis for the discrimination is a separate issue from the material adverse employment action. And in this back to the earlier reference to this court's on back opinion in 2004, before it ended up in front of the US Supreme Court, this court said, you know, at that time, going back about 20 years, went through the progression of adverse employment action, opinions in this jurisdiction from guys in 83 to Yates in 87 to coaxes, and I'm pronouncing I never know if I'm pronouncing it correctly in 1996. And material adverse employment actions have been part of discrimination doctrine. And everybody agrees that retaliation is a form of discrimination for 20 years. We are now 17 years. Okay, so let's, let's, let's say you're right, that whether it's from the US Supreme Court decisions are our own that material and adverse are embedded in our cases, we've got to figure out what it means. Do you think it's fair game to apply the Burlington Northern definition of material adverse, you know, the reasonable observer test to discrimination claims like this one? Is that appropriate? I mean, they're go ahead. Yes, Your Honor, that's exactly how defendants would say is they both speak in terms of, you know, discriminatory conduct or discriminatory actions. Once again, you know, retaliation is nothing other than another type of discrimination. And since both parts of the statute use the exact same words, our position is that material adverse employment action should be you know, at least the basic aspect of having material adverse employment action should be the same for both types of discrimination. Obviously, the US Supreme Court in Burlington said, you know, what constitutes material adverse employment action is broader for purposes of retaliation discrimination type cases, as opposed to the normal race, gender, national origin types of discrimination. But no, we absolutely take the position that you know, the material adverse employment action applies to Title Seven, you know, what I call traditional discrimination cases. What do you think about the third party retaliation claim? Yes, I'll move on to that. First of all, third party retaliation claim. The pleading in the complaint is 100% false. The pleading in the complaint, I believe it's paragraph here 6466 says that the unfair labor practice charge was based upon the OCRC's finding of discrimination. That's 100% false. First of all, from a jurisdictional standpoint, the Ohio State Employment Relations Board derives its authority from Ohio Rise Code Chapter 4117, whereas the Ohio Civil Rights Commission derives its authority from Ohio Rise Code Chapter 4112. And if you look at the charge that was filed, the unfair labor practice charge, it doesn't complain about the nature of the allegation, it talks about the fact that what is supposed to be a privileged communication or confidential meeting, step three grievance hearing was released to the media. And then the charge was against the union because it wasn't known who released it. We know, you know, there are only three people in the room at the time of the meeting with the step one grievance hearing under the collective bargaining agreement was tape recorded. There are only three people in there, plaintiff Nolan Moore, plaintiff Freit, and Commissioner Carlton. As we put forth in our headings, obviously, the city never had possession of that tape recording. So somebody from the union gave it to the media. So if it wasn't either plaintiff Nolan Moore or plaintiff Freit, they gave it to somebody who either gave it to the media or gave it to the Civil Rights Commission and then tipped off the media, the media I'm trying to, as your time's dwindling, I'm trying to get at the point of how do you apply Thompson in this setting, right? Thompson says you can have third party retaliation claims. Why isn't that a problem for you? Well, first of all, it's not a third party retaliation claim, because we didn't file it against the individuals. We don't identify anybody. Despite what plaintiffs have said, we don't identify anybody in the charge as being the factual predicate for unfair labor practice charge. And if you look at the unfair labor practice charge in general, you know, 41-17-11, you can file it against four parties when you're dealing with the employer organization, you can file against the employer organization itself, you can file it against the agents, you can file it against their other entities, and you can also file it against the employees themselves, the bargaining members. And so we did not file this against the bargaining members. We only filed it against the employees. And so when you get to the issue of the standard for adverse employment action, we don't identify anybody. It could have been, like I said, it could have been any of these five plaintiffs, it could have been anybody in the bargaining, it could have been their business agents. That's why the charge was claimed. And I also want to point out one thing is that it's, if you look at the evidence that we submitted in support of summary judgment, document 32-11 document, one of the plaintiffs, at least the plaintiff, Nora Moore, is trying to use the unfair labor practice charge as both a shield and a sword. If you look at that document, she disavows any relationship to the unfair labor charge. She says, look, there were conciliation agreements reached. I was a party to this case. I'm not party to the conciliation agreements. I'm not going to be bound by the terms of the conciliation agreements. And then turns around and files a lawsuit, obviously going through the OCRC first, files a lawsuit and says, no, filing against the union, against the individual bargaining members is one and the same. We can't use, you know, the argument on one hand as a shield and the other hand against us as a sword. And briefly, I would get to the equal protection claim. Once again, their equal protection claims, which was raised, if you look at the issue in our motion for more definite statement, we clearly said, look, are you filing a due process claim or an equal protection claim? The answer came back, not that we're filing both, we're filing a due process claim, which has the same adverse employment action requirement. And then we went out to file a motion for judgment on the pleadings. And so that is the basis for why, you know, we believe that there is no equal protection, you know, equal protection claim was for, thank you, your honors for your time. Thank you. We'll, I think we've got some rebuttal for the claimants. Yes, your honors. Thank you. So I think I had three minutes for my rebuttal. So just a few points I'd like to hit. First and foremost, your honors, I think it's very important to note that there's also a claim here for injunctive relief, which is important and goes to the heart of title seven. I do want to point out one, one really important note of the discovery in this case. During Paul Carlton's deposition, she was asked numerous times, what is the intention here going forward? And it's important. I think for the record, her answer, my belief is that until that's why we're here today. And that's why we're here in this lawsuit to determine if that is for lack of a better word, permissible for me to do here. The city of Cleveland is not saying this is remorseful. This was wrong. We need to fix it. The opposite, your honors, they're doubling down. They're saying we're going to look to the court to allow us to institute a white captains can work together. Black captains cannot your honors. This case is equally about what happens moving forward. If the decision of the district court is not reversed compared to, if it is Cleveland and many others are watching to see what happens when the government employer creates and enforces a discriminatory and racist policy, stopping just short of instituting punishment against minority group of employees. Where do we go next? Where's the adverse action? If the city required blacks and whites to use separate water fountains or sleep in separate rooms, could the precedent in a case like council, how would this case work? If just imagine a different policy and what's going on is forget captains. It's just patrol officers and it's patrols. And you like the idea of diverse patrols. In other words, you have two officers in each patrol. Um, sometimes you're in a heavily minority neighborhood of this race, maybe sometimes majority, sometimes another minority. But the point is they like the idea that when you're doing this kind of community policing to make the, uh, the cruise as diverse as possible. So that obviously really messes up shift preferences, right? If you're trying to maximize diversity, could, could, uh, could a police station do that? In other words, just say, we think it's a really good idea to have an African-American and a white officer as often as possible. Um, that seems to generate something similar to what you've got here. And I'm just trying to figure out if that's prohibited. Your honor, the most troubling part of this case, or I should say one of them, cause there are numerous, the city of Cleveland here is not doing that. They're saying, if you're an all white shift, have added Ms. Carlton and her deposition said they've had all white shifts before and not broken them up. So your, your, your answer is the policy I propose would be okay. It would, I think depending, it would depend on the fact. Why isn't that discrimination in terms of employment? In other words, the African-American officer does not want to do the, the night shift, but the supervisor says, I want you there. Cause it's the only way to have diversity. What happens? And your honor? Yes. You know, I understand that, if that were an argument or if that had actually happened from the city of Cleveland, there may, I know, I know it's not this case. You're not giving away anything. I'm just trying to figure out what do I do with that next case? I know it's not your case. I get it, but I'm just trying to figure out what happens in that case. Yeah. I think, I think there would still be a violation of the terms, conditions of employment, especially if based on seniority, which is clearly a privilege, clearly a privilege in this instance. If you're taking that away based on the race of an employee, I think it would violate terms, conditions, and privileges of employment. Your honors, thank you so much. I do see my time is up. We would ask that this court reverse the district court. And I do thank you for your time. All right. Thank you to all three of you for your helpful briefs and arguments as always. We're grateful when you answer our questions and you did a lot of that today. There was been quite a bit of scheduling and thank you for the accommodations all around on that front. So we're grateful to all three of you. Thank you. The case will be submitted and the clerk may adjourn court.